UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GEORGE R. MICHELL; MICHELL NORTH LLC; MICHELL.BRADLEY LLC; BERLIN FOODS, LLC; and UTICA FOODS, LLC,

        Plaintiffs,

-against-

MCDONALD'S CORPORATION; MCDONALD'S USA, LLC; JOSEPH CHICZEWSKI; JEFF ROTH; and JOHN CRONAN,

        Defendants.

**MEMORANDUM & ORDER**
**24-CV-3442 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs George R. Michell, Michell North LLC, Michel.Bradley LLC, Berlin Foods LLC, and Utica Foods LLC (collectively, "Michell") have filed a motion seeking leave to amend their complaint under Federal Rule of Civil Procedure 15(a). Michell acknowledges, however, that the motion "is functionally a motion to reconsider" the court's dismissal of its contract claim in the Memorandum and Order entered on September 23, 2025 (the "Order"). (Pls.' Request for Pre-Motion Conf. re Claim for Breach of Contract ("Pls.' Mot.") (Dkt. 91) at 1; see Mem. & Order Granting in Part McDonald's Mot. to Dismiss ("Order") (Dkt. 88).) Alternatively, Michell seeks permission to file an interlocutory appeal of that dismissal.[1] (Pls.' Mot. at 1.) Defendants

---

[1] Michell titled the present motion as "Plaintiffs' Request for Pre-Motion Conference on Request for Leave to File Second Amended Complaint." (Pls.' Mot. at 1.) Doing so was in line with Rule IV(A)(2) of this court's Individual Rules, which requires a pre-motion conference for a "motion to amend a pleading pursuant to Fed R. Civ. P. 15." But as Michell acknowledges, the motion "is functionally a motion to reconsider" the court's treatment of its contract claim. (Id.) For that reason, along with the extensive discussion that Michell provided in this filing, the court construes

1

McDonald's Corporation, McDonald's USA, LLC, Joseph Chiczewski, Jeff Roth, and John Cronan (collectively, "McDonald's") oppose Michell's motions. (Defs.' Resp. to Pls.' Mot. ("Defs.' Opp.") (Dkt. 97) at 1.) The court DENIES both Michell's motions for reasons that it now explains.

## I. BACKGROUND[2]

Plaintiff George R. Michell is a franchisee of McDonald's restaurants. (First Am. Compl. (Dkt. 55) ¶ 9.) After McDonald's refused to renew his franchisee license, he filed the present suit in May 2024. He asserts eight counts, alleging that the chain violated its franchise agreement; state and federal antidiscrimination laws; state statutory protections for franchise operators; and common law protections for promissory estoppel, tortious interference, and fraud. (Id. ¶¶ 164-330.) In December 2024, McDonald's moved to dismiss all but two counts of Michell's complaint.[3] (See Defs.' Mot. to Dismiss ("Defs.' Mot.") (Dkt. 61-1).)

The court granted in part and denied in part McDonald's motion. It dismissed Michell's state law claims for alleged breaches of the franchise agreement, common law fraud, and promissory estoppel, as well as Michell's federal retaliation claim under Section 1981(a) of Title 42 of the U.S. Code ("Section 1981") (respectively, "Counts III, IV, V, and VIII"). (Order at

---

Plaintiffs' motion as a motion for reconsideration and a motion for interlocutory appeal. (See Text Order Dated 10/20/2025.) Those motions are fully briefed and ready for the court to resolve. (See generally Pls.' Mot.; Defs.' Opp.; Pls.' Reply (Dkt. 98).)

[2] The court assumes familiarity with the relevant facts and procedural history of this case. For a fulsome treatment of those details, see Order at 2-14.

[3] Those two counts allege violations of Connecticut's Franchise Act and its Unfair Trade Practices Act against corporate defendants McDonald's Corporation and McDonald's USA, LLC (respectively, "Counts I and II"). (See Order at 13 & n.14.)

18-26 (dismissing Count III), 26-31 (dismissing Count IV), 31-34 (dismissing Count V), 46-51 (dismissing Count VIII).) However, the court declined to dismiss Michell's state law tortious interference claim ("Count VI") and his Section 1981(a) disparate treatment claim ("Count VII"). (*Id.* at 34-38 (denying McDonald's motion to dismiss Count VI), 38-46 (denying McDonald's motion to dismiss Count VII).) The court also granted Michell leave to amend his common law fraud (Count IV) and retaliation (Count VIII) claims, but denied him leave to replead his contract (Count III) and promissory estoppel (Count V) claims. (*Id.* at 52.) As to these latter claims, the court reasoned that they "contravene[d] fundamental principles of contract law." (*Id.* at 52-53 (internal citations omitted).)

Relevant here is Michell's contract claim based on alleged breaches of the parties' franchise agreement (the "Franchise Agreement") (Count III). Through this claim, Michell argues that corporate defendants McDonald's Corporation and McDonald's USA, LLC abused their discretion and breached the implied covenant of good faith and fair dealing by making decisions arbitrarily, capriciously, and with improper motive. (*Id.* at 18.) The court, however, held that under applicable state law, the Franchise Agreement's express and unambiguous language trumped the implied covenant. (*Id.* at 22; *see also id.* at 25-26 ("As a matter of law, the Franchise Agreement's express terms defeat Michell's contract claim based on an alleged breach of the implied covenant of good faith and fair dealing.").) As the court explained, that clear language states:

> No future franchise or offers of franchises for additional McDonald's restaurants . . . have been promised to [Michell] and any other franchise offer shall only be in writing, executed by an officer of McDonald's, and specifically identified as a Franchise Agreement or Rewrite Commitment Letter.

(*Id.* at 23 (quoting (Executed Franchise Agreement Between McDonald's Corporation & Franchisee George R. Michell ("Franch. Agr.") (Dkt. 29-3 at ECF pp. 8-20) ¶ 28(h)).) That language also cautioned that the agreement contains "no promise or representation as to the renewal of this Franchise or the grant of a new franchise." (*Id.* (quoting Franch. Agr. ¶ 28(a)).)

Michell now seeks reconsideration of the court's order to the extent that it denied his request to replead his contract claim. (Pls.' Mot. at 1 (citing Order at 51-52).) Specifically, he challenges the court's conclusion that "amendment" of this claim "would be futile." (*Id.* (citing Order at 51-52); *see* Order at 52 (denying Michell leave to replead the contract claim because it "ask[s] this court to contravene fundamental principles of contract law").) In the alternative, he seeks leave to file an interlocutory appeal from the court's ruling. (Pls.' Mot. at 11-12.) The court now resolves those requests.[4]

## II. LEGAL STANDARDS

The standard for granting a motion for reconsideration is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019) ("A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority.").[5] "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters,

---

[4] Pursuant to the Order, Michell filed a second amended complaint under seal on October 30, 2025, which amends the common law fraud (Count IV) and retaliation (Count VIII) claims. (*See* Order at 52; Sealed Second Am. Compl. (Dkt. 94).) The court does not address that complaint in this opinion. (*See* Defs.' Letter Requesting Pre-motion Conf. (Dkt. 102); Text Order Dated 11/14/2025.)

[5] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk*, 935 F.3d at 54 (quoting *Shrader*, 70 F.3d at 257); *see Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Ptrs.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "Courts in this circuit have thus generally held that parties seeking reconsideration may not advance new facts not previously presented to the [c]ourt." *United States v. Raniere*, No. 18-CR-0204 (NGG), 2024 WL 991098, at *1 (E.D.N.Y. Mar. 7, 2024) (citing *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014)).

Interlocutory appeal under 28 U.S.C. § 1292(b) provides "a rare exception to the final judgment rule that generally prohibits piecemeal appeals" to "avoid protracted litigation." *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Under that statute, a district court can certify a nonfinal order in a civil case for interlocutory appeal if it finds that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). But even if a movant satisfies these three criteria, certification remains "entirely a matter of discretion for the district court." *In re Roman Cath. Diocese of Albany, Inc.*, 745 F.3d 30, 36 (2d Cir. 2014).

## III. DISCUSSION

Michell fails to meet the demanding standards for reconsideration or interlocutory appeal. The court discusses why.

### A.  Motion for Reconsideration

Michell's argument for reconsideration is twofold. First, he urges the court to allow him to plead new facts. (Pls.' Mot. at 2.) He reasons that those facts would "reasonably be expected to alter the conclusion reached by the court." (*Id.* (citing *Shrader*, 70 F.3d at 257).) He discusses three sets of facts that he believes show that the implied covenant controls this case. First is McDonald's recent representations to the Federal Trade Commission (the "FTC") that its "franchise agreement is designed to set clear expectations that are consistently applied to all parties." (*Id.* at 3.) Second is McDonald's June 2022 announcement of a modified procedure for franchise renewal. (*Id.* at 5.) That, according to Michell, "bolster[s] the conclusion that McDonald's longstanding course of dealing was to consistently grant[,] rewrite[,] or [re]new terms to franchisees who consistently met McDonald's National Franchising Standards." (Pls.' Reply at 7.) And third is a set of FTC-mandated disclosures about franchise renewal that leaves an "overall impression" that McDonald's will apply its renewal policy "fairly, consistently, and equally among all franchisees." (Pls.' Mot. at 5-7.)

Separately, Michell contends that a correction is needed to "prevent manifest injustice." (*Id.* at 1 (citing *Article 13, LLC v. Ponce de Leon Fed. Bank*, 686 F. Supp. 3d 212, 216 (E.D.N.Y. 2023)).) He thinks that *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972 (1984) "should be controlling here." (*Id.* at 8.) According to Michell, *Dayan* held that a decision by McDonald's to terminate a franchisee for repeated noncompliance was "was reviewable under the common law [i]mplied [c]ovenant." (*Id.* (citing *Dayan*, 125 Ill. App. 3d at 990-91).) Michell proclaims that in light of

that holding, this court's ruling "makes no sense." (*Id.* at 9.) He then hedges by saying that the Franchise Agreement "at a minimum" presents an "ambiguity as to whether" it "disavow[s] the [i]mplied [c]ovenant." (*Id.* at 11 (emphasis omitted) (citing Franch. Agr. ¶¶ 1(c)-(d), 28(a), (h)).)

Michell has failed to meet the "strict" standard required to grant a motion for reconsideration. *See Shrader*, 70 F.3d at 257. As McDonald's observes, the new facts that Michell seeks to introduce "support the same contract theory [that] the [c]ourt rejected" in the Order. (Defs.' Resp. at 2-3; *see* Order at 22-23.) And even assuming these facts are "new," the sole reason that Michell provides for failing to discuss the facts in the complaint was that he "believe[ed] the[] contract claim was sufficient under notice pleading." (Pls.' Reply at 7.) Michell cannot add facts to his complaint via a motion for reconsideration just because he did not think that he needed to plead them the first time around. *See Raniere*, 2024 WL 991098, at *1 (citing *In re Facebook*, 43 F. Supp. 3d at 373 (noting that a "party seeking reconsideration" may not "advance new facts, issues, or arguments not previously presented to the [c]ourt." (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990))). To allow otherwise would impermissibly permit him a "second bite at the apple." *Analytical Survs.*, 684 F.3d at 52. Thus, Michell cannot plead his three new facts.

Michell's other arguments concerning "manifest injustice" fare no better. (*See* Pls.' Mot. at 1.) As McDonald's notes, Michell "make[s] no attempt to identify any controlling law the [c]ourt overlooked." (Defs.' Reply at 2.) Indeed, the only case Michell "prominently cites" is *Dayan*—a case that is not controlling (as a decision of an intermediate appellate state court) and which Michell cited in his opposition to McDonald's motion to dismiss (which the court did not deem persuasive). (*See id.*; *see also* Pls.' Opp'n to Defs.' Mot. (Dkt. 73) at 10 (citing *Dayan*, 125 Ill. App.

3d at 989-91), 13 (citing *Dayan*, 125 Ill. App. 3d at 991).) But as McDonald's explains, "*Dayan* involved McDonald's attempt to terminate a franchise, *not* its decision to deny an operator franchise renewal." (*Id.* at 6 (emphasis in original).) Therefore, *Dayan* did not address the provisions underpinning the court's analysis because paragraph 28(a) and (h) of the Franchise Agreement were not implicated. (*See id.*; *see also* Order at 22-24 (analyzing paragraphs 1, 15, and 28 of the Franchise Agreement).) So, Michell's argument that the court erred by finding those provisions to be clear is what "makes no sense." (*See* Pls.' Mot. at 9, 11.) Thus, Michell fails to demonstrate any error in the court's dismissal of his contract claim, let alone "manifest injustice."[6] *See Virgin Atl. Airways*, 956 F.2d at 1255.

For these reasons, the court denies Michell's motion for reconsideration. *See Shrader*, 70 F.3d at 257.

### B. Motion for Interlocutory Appeal

Michell argues that the court should allow him to file an interlocutory appeal from its ruling dismissing his contract claim. He

---

[6] Michell also lists several newly raised arguments to support his preferred interpretation of the Franchise Agreement. Two are chief among them. First, Michell contends that the court's interpretation is "unconscionable." (Pls.' Mot. at 10-11.) But "McDonald's reserving for itself the right to decide with whom it wants to embark on what is typically a 20-year business relationship at a restaurant location" does not implicate the extremely high standard for unconscionability. (Defs.' Resp. at 7); *see Doctor's Assocs., Inc. v. Jabush*, 89 F.3d 109, 113 (2d Cir. 1996) ("An unconscionable bargain is one which no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other."). Second, Michell states that he should be allowed to oppose McDonald's counterclaim for breach of the parties' franchise agreements by arguing that McDonald's violated its own standards. (Pls.' Mot. at 8.) But as McDonald's explains, "there is nothing about the [c]ourt's dismissal of Plaintiffs' contract claim that will restrict or impair Plaintiffs' ability to make whatever arguments they wish in defending themselves against the counterclaim." (Defs.' Resp. at 7.)

asserts that the dismissal "raises legal issues on a controlling question of law on which there is substantial ground for a difference of opinion." (Pls.' Mot. at 12 (citing *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 277 (E.D.N.Y. 2021)).) As support, he notes that the court cited "decisions involving McDonald's from outside the Second Circuit." (*Id.*; *see* Pls.' Reply at 8 (arguing that cases cited by McDonald's are not controlling, "conflict with *Dayan*," and that the conflict "must be resolved").) Michell also contends that appellate review is "imperative" because the issues raised by the contract claim are "important" to him, "all other McDonald's franchisees," and "other franchisees with similar contracts." (Pls.' Mot. at 12.) He then notes that "the start of the trial is not likely to be materially delayed" by an appeal because "the fact issues underlying the contract claim largely overlap [with] other claims that remain in the case on which discovery is . . . proceeding." (*Id.*)

Michell has not shown this case to be "a rare exception" meriting interlocutory appeal. *See Koehler*, 101 F.3d at 865. As McDonald's notes, a "question of contract interpretation typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal." (Defs.' Resp. at 8 (quoting *U.S. Underwriters Ins. Co. v. Kenfa Madison, LLC*, No. 20-CV-2761 (NGG) (LB), 2023 WL 5617772, at *4 (E.D.N.Y. Aug. 30, 2023) (collecting cases)).) And even if it were, McDonald's correctly observes that there is no "substantial ground for difference of opinion" in this case. (*Id.*) As mentioned, the express and unambiguous terms of the Franchise Agreement supersede the implied covenant—a conclusion that the case law "uniformly" supports. (*Id.*; *see* Order at 22-26 (discussing case law and concluding "[a]s a matter of law, the Franchise Agreement's express terms defeat Michell's contract claim based on an alleged breach of the implied covenant of good faith and fair dealing").) Michell also fails to justify his claim that immediate appellate review "may materially advance" the case's

resolution. (Pls.' Mot. at 12; Pls.' Reply at 8.) Instead, he argues only that an appeal would not delay the start of trial or impede discovery. (*See* Pl.'s Mot. at 12; Pls.' Reply at 8.) Section 1292(b) requires more. *See* 28 U.S.C. § 1292(b) (immediate appeal must "materially advance the ultimate termination of the litigation").

In sum, Michell is not entitled to an interlocutory appeal from the court's ruling on his contract claim.[7] *See Koehler*, 101 F.3d at 865.

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Michell's motion to amend his complaint—which the court construes as a motion for reconsideration—and his motion for interlocutory appeal.

SO ORDERED.

Dated:   Brooklyn, New York
         December 11, 2025

> s/Nicholas G. Garaufis
> _____
> NICHOLAS G. GARAUFIS
> United States District Judge

---

[7] Because Michell has satisfied "[n]one of the statutory criteria for an interlocutory appeal," (Defs.' Resp. at 9), the court need not address whether it would have exercised its discretion to grant immediate appellate review, *see In re Roman Cath. Diocese*, 745 F.3d at 36.